IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONNA HOFFMAN, | ) | CIV F 04-5714 AWI DLB |
| | ) | |
| Plaintiff, | ) | PRETRIAL ORDER |
| v. | ) | |
| | ) | Motions In Limine Hearing: |
| KENT TONNEMACHER, M.D.; | ) | May 2, 2006 |
| UNKNOWN PHYSICIANS; | ) | 1:30 p.m., Courtroom 2 |
| MEMORIAL MEDICAL CENTER, | ) | |
| | ) | Trial: May 9, 2006 |
| Defendants. | ) | 8:30 a.m., Courtroom 2 |
| _____ | ) | |
| | | RULES OF CONDUCT |

The pretrial conference was held on April 4, 2006.   The trial in this matter is set for May 9, 2006.  Trial confirmation is set for May 2, 2006, at 1:30 p.m.

I.  Jurisdiction and Venue

The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, and venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

II.  Jury Trial

Both parties have demanded a jury trial.

III.  Facts

A.  Undisputed Facts

The parties agreed that certain facts were undisputed for purposes of the scheduling

conference and believe that those facts remain undisputed.

B.  Disputed Facts

1.      Whether defendant Dr. Tonnemacher provided plaintiff with a medical examination and treatment that failed to comply with the applicable standard of care;

2.      Whether defendant Memorial Medical Center provided emergency medical services that complied with EMTALA;

3.      Whether the wrongful acts of the defendants caused plaintiff any harm; and

4.      What amount of damages would fairly compensate the plaintiff for the harm defendants caused.

IV.  Disputed Evidentiary Issues

Plaintiff:

1.      The plaintiff will seek to exclude the introduction of any evidence or witnesses not disclosed during discovery or provided as supplemental discovery in a timely fashion, to the extent that such information was the subject of a discovery request.

2.      The plaintiff will also move to preclude the defense experts from testifying at trial as to the credibility of any witness, or for making factual findings.

3.      The plaintiff will also seek to exclude any expert witnesses for whom requested discovery has not been provided.

4.      The plaintiff will seek to exclude reference to any aspect of her medical history not germane to the issues in this case.

5.       Any other motions in limine not yet anticipated will be timely filed.

Defendant:

1.      The defendants will seek to exclude the introduction of any evidence or witnesses not disclosed during discovery or provided as supplemental discovery in a timely fashion, to the extent that such information was the subject of a discovery request.

2.      The defendants will also move to preclude the defense experts from testifying at

daw                                        2

1  trial as to the credibility of any witness, or for making factual findings.

2      3.    The defendants will also seek to exclude any expert witnesses for whom requested

3  discovery has not been provided.

4      4.     Defendant Tonnamacher will seek to exclude any reference to purpura fulminans,

5  skin lesions, the treatment thereof and the subsequent cardiac surgery.

6      5.    Any other motions in limine not yet anticipated will be timely filed.

7  V.  Special Factual Information

8  Plaintiff submits the following special factual information:

9      1.    According to plaintiff's treatment records from May 22 and 23, 2003, she arrived

10 via ambulance and was admitted to MMC's Emergency Department on May 22, 2003 at 8:54

11 p.m. with listed complaints of chills, fever, hyperventilation, severe abdominal pain, chest pain

12 and congestion.  Plaintiff was noted to have a medical history of hypertension, hypothyroidism,

13 Hodgkin's lymphoma, a prior splenectomy, and a heart murmur at the time of her admission.

14     2.    Upon presenting in the emergency room, plaintiff's fever was 102.3 degrees, her

15 pulse was 126, her respiration was 24, and her blood pressure was 159/87.  It was also reported

16 that plaintiff had a prior reported fever of 106 degrees when she was at home with the ambulance

17 crew shortly before her admission.

18     3.    At approximately 9:30 p.m. on May 22, plaintiff had a urinalysis and chest x-ray

19 done, and both came back normal. No blood culture, urine culture, CBC, blood differential, or

20 other type of test was administered.

21     4.    At 10:45 p.m. on May 22, plaintiff was discharged.  Plaintiff still had a 102.5

22 degree fever and an elevated pulse, 124, upon discharge.  The clinical impression upon discharge

23 was fever and bronchitis, with a possible pneumonia.  Plaintiff was discharged with a

24 prescription for Zithromycin, an oral antibiotic.

25     5.    Plaintiff returned to MMC's emergency room via ambulance on May 23, 2003, at

26 approximately 4:00 p.m.  Plaintiff had an extremely high pulse and low blood pressure at the

27

28 daw                                                3

time of her return admission.  The initial clinical impression was fever and bronchitis.

6.      Upon her return, plaintiff was clearly septic and went into septic shock.  Plaintiff was admitted into MMC's intensive care unit at approximately 5:30 p.m.  Initially, her prognosis was extremely poor.

7.      At 6:02 p.m. blood cultures were delivered to MMC's laboratory, and the results came back on May 24, 2003 at 4:12 a.m.  Those cultures showed that plaintiff had a virulent bacterial infection, with the streptococcus pneumonia bacteria being the identified organism.

8.      Plaintiff remained in the hospital until July 30, 2003, and was treated during that time for a severe and diffuse bacterial infection, one that resulted in her developing bacterial endocarditis (a heart infection), cyanotic toes (which required multiple amputations in August 2003), large infected wounds all over her body, and other serious complications.

9.      Prior to the incident, plaintiff was working as the manager of her apartment complex, and she still holds that same position.

10.     Plaintiff graduated from high school and has some vocational college training.

11.     Plaintiff was in good physical condition prior to the incident.

Defendants submits the following special factual information:

Defendants' agree for the most part with paragraphs 1-9 listed above, with the following exceptions:

1.      Defendants' disagree with plaintiff's assertion that she  was discharged *with possible pneumonia*.  Defendants' position is that the pneumonia issue was a differential diagnosis prior to the x-rays being taken.  The discharge diagnosis was only fever and bronchitis.

2.      Defendants' disagree that plaintiff was in good physical condition prior to the incident and contend that plaintiff had a preexisting aortic valvular stenosis that necessitated the aortic value replacement procedure.

daw

4

VI.  Relief Sought

The plaintiff is requesting an award of compensatory damages.  Plaintiff is also requesting attorneys fees, cost of suit, and any other relief to which she may be entitled.

VII.  Points of Law

Plaintiff submits the following points of law:

1.    Overview of EMTALA

In 1986 Congress enacted EMTALA, which makes hospitals liable for "refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1039 (D.C.Cir. 1991). EMTALA is not a negligence statute.  See Summers v. Baptist Medical Center Arkadelphia, 91 F.3d 1132, 1134-1136 (8th Cir. 1996); but see Griffith v. Mt. Carmel Medical Center, 831 F.Supp. 1532, 1543 (D.Kan. 1993) (EMTALA and medical malpractice are not mutually exclusive and the same evidence may be used to establish both claims).  To the contrary, "[EMTALA's] core purpose is to get patients into the system who might otherwise go untreated and be left without a remedy because traditional medical malpractice law affords no claim for failure to treat." Bryan v. Rectors and Visitors of the Univ. of Va., 95 F.3d 349, 351 (4th Cir. 1996); see also Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 792-93 (2d Cir. 1999).  A hospital need not have a specific intent to deny an emergency patient treatment for any discriminatory reason.  See Roberts v. Galen of Virginia, Inc., 525 U.S. 249, 250 (1999). Instead, a hospital is strictly liable if it fails to comply with EMTALA's terms.  See Abercrombie v. Osteopathic Hosp. Founders Ass'n, 950 F.2d 676, 681 (10th Cir. 1991); Stevison v. Enid Health Systems, Inc., 920 F.2d 710, 713 (10th Cir. 1990) ("We construe this statute as imposing a strict liability standard subject to those defenses available in the act.").

EMTALA has three distinct and severable requirements.  First, under 42 U.S.C. § 1395dd(a), a hospital is obligated to provide to all individuals who come to its emergency department seeking examination or treatment, an "appropriate medical screening examination"

daw                                                    5

within the capability of its emergency department, including ancillary services routinely available to the emergency department, in order to determine whether an emergency medical condition exists.  Second, under 42 U.S.C. § 1395dd(b), a hospital must provide such further medical examination and treatment as is necessary to stabilize an individual whom it has determined has an emergency medical condition.  Third, under 42 U.S.C. § 1395dd(c), a hospital may not transfer an individual whom it has determined has an emergency medical condition that has not been stabilized unless (a) the individual, upon being informed of the risks, nonetheless requests the transfer, or (b) the physician, either personally or through  another qualified medical person, certifies that a transfer would be medically beneficial.  Whether a hospital has complied with EMTALA is determined based in significant part on the emergency capabilities of the hospital, its treatment of similarly situated patients, and whether any screening examination provided was appropriate to identify an emergency medical condition.  See Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256-1259 (9th Cir. 1995); Jackson v. East Bay Hospital, 246 F.3d 1248, 1253-1255 (9th Cir. 2001).

2.      EMTALA's Screening Requirement

MMC argues that it provided an appropriate screening examination to plaintiff. "The essence of [EMTALA's] screening requirement is that there be some screening procedure, and that it be administered even-handedly."  Correa v. Hosp. San Francisco, 69 F.3d at 1192.  Thus, there is both a substantive and a procedural component to an appropriate medical screening under EMTALA:  "[a] hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints."  Id.;  see also Jackson v. East Bay Hosp., 246 F.3d 1248, 1256 (9th Cir. 2001) ("We hold that a hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not 'designed

to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.' " (quoting Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1257 (9th Cir. 1995)).  Under EMTALA, there is an absolute, minimal baseline requirement for screening exams:  a hospital cannot discharge its duty under EMTALA by providing a screening at such a minimal level that it cannot be said that the screening is "appropriate."  See Baber v. Hospital Corp. of America, 977 F.2d 872, 879 n.7 (4th Cir. 1992) (stating that "hospitals could theoretically avoid liability by providing very cursory and substandard screenings to all patients... a hospital's standard may be so low "that it amount[s] to no 'appropriate medical screening'").  Thus, there is an additional requirement in 42 U.S.C. § 1395dd(a) that a hospital, at minimum, provide an examination within its capabilities to determine whether an emergency condition exists, see Repp v. Anadarko Municipal Hosp., 43 F.3d 519, 522 (10th Cir. 1994). Further, the related resources of a hospital must be utilized if necessary to comply with EMTALA's appropriate screening requirement.  See Power v. Arlington Hospital Association, 42 F.3d 851, 858 (4th Cir. 1994) (affirming a multimillion dollar verdict in a factually similar case where a hospital failed to utilize blood cultures as part of its screening of an emergency patient with a possible infection); Battle ex rel. Battle v. Memorial Hosp., 228 F.3d 544, 558 (5th Cir. 2000) (finding that a rational jury may could have found an EMTALA screening violation where the evidence could be interpreted to show that a patient was discharged without additional procedures being performed to determine the source of his fever and infection).

It is also clear that the plaintiff is not limited in her ability to prove an EMTALA violation by MMC's non-specific policies and procedures.  A hospital may not simply hide behind a lack of standard emergency room procedures, and EMTALA plaintiffs are allowed to look to other sources to show that the screening was inappropriate.  Griffith v. Mt. Carmel Medical Center, 831 F.Supp. 1532, 1544 (D.Kan. 1993) (citing Power v. Arlington Hosp., 800 F.Supp. 1384, 1387 n. 6 (E.D.Va. 1992), where the court specifically held that, in the absence of standard screening procedures, a plaintiff may look to other evidence of differential treatment, including "failure to meet the standard

of care to which the [h]ospital adheres").

Moreover, the appropriateness of a screening is inherently fact-specific; indeed, a combination of relatively common physical symptoms, given the patient's medical history, can indicate an emergency condition in that patient triggering EMTALA.  See Correa, 69 F.3d at 1192 (1st Cir. 1995) (holding that "nausea and dizziness ... might well herald the onset of an emergency medical condition in the case of a hypertensive diabetic"); see also Lopez Soto v. Hayawek, 175 F.3d 170, 173 (1st Cir. 1999) (citing Correa and stating further that "a patient who communicates that she feels nauseous or dizzy could be describing a symptom of an emergency medical condition.").

Defendant Memorial Medical Center submits the following points of law:

Congress enacted the Emergency Medical Treatment and Active Labor Act of 1986 ("EMTALA") because it was concerned that hospitals were "dumping" patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized.  *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 99th Cir. 1995); *Bryant v. Adventist Health System/West*, 289 F.3d, 1162, 1165 (9th Cir. 2002).  EMTALA, however, was not enacted to establish a federal medical malpractice cause of action, nor to establish a national standard of care.  *Bryant*, 289 F.3d at 1166, citing *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 993 (9th Cir. 2001); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995).  *(Citing H.R. Rep. No. 241, 99th Cong. 1st Sess. (1986)*, "consistent with the statutory language, the legislative history shows that Congress enacted the EMTALA not to improve the overall standard of medical care, but to ensure that hospitals do not refuse essential emergency care because of a patient's inability to pay.").

The Court further directs the parties to its order on Memorial Medical Center's motion for partial summary judgment.

daw                                                8

VIII.  Abandoned Issues

   None at this time.

IX.  Witnesses

   _____The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

   A.  Plaintiff's Witnesses

   _____1.   Donna Hoffman

            2.   Donna Gonzales

            3.   Plaintiff's family members, including her parents, ex-husband, and
                 daughter

            4.   Dr. David Olson

            5.   Dr. Paul K. Bronston

            6.   Dr. Peggy Goldman

            7.   Dr. Daniel Thwaites

            8.   Dr. Scott Oslund

            9.   Dr. Robert Coronado

            10.  Dr. Joe Neal

            11.  Plaintiff's other providers identified during discovery

            12.  Plaintiff's other designated non-retained experts

            13.  Any other witnesses identified during discovery erroneously omitted
                 herein

            14.  Any witnesses named by the defendants

            15.  Custodians of records for any records whose authenticity is not stipulated

daw                                    9

B.     Defendant KENT TONNEMACHER's witnesses:

    1.     Dr. Kent Tonnemacher

    2.     Dr. Robert Davidson

    3.     Dr. Eric Weiss

    4.     Dr. Eric Michael Radetsky

    5.     Dr. David Busch

    6.     Donna Hoffman

    7.     Donna Gonzales

    8.     Plaintiff's family members, including her parents, ex-husband, and daughter

    9.     Dr. David Olson

    10.    Dr. Paul K. Bronston

    11.    Dr. Peggy Goldman

    12.    Dr. Daniel Thwaites

    13.    Dr. Scott Oslund

    14.    Dr. Robert Coronado

    15.    Dr. Joe Neal

    16.    Defendants' other providers identified during discovery

    17.    Defendants' other designated non-retained experts

    18.    Any other witnesses identified during discovery erroneously omitted herein

    19.    Any witnesses named by the plaintiff.

    20.    Custodians of records for any records whose authenticity is not stipulated.

C.     Defendant MEMORIAL MEDICAL CENTER's witnesses:

    1.     Defendant Kent Tonnemacher, M.D.

    2.     Dr. Joe Neil

    3.     Michael J. Bressler, M.D.

    4.     Penny Hastie

daw

5.      Barbara Osburn, R.N.

6.      Other witnesses disclosed by other parties to this action.

X.  Exhibits

_____The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

A.  Plaintiffs' Exhibits

_____1.      Video of Plaintiff during her hospital admission

2.      Photographs of plaintiff's injuries

3.      Plaintiff's medical records of her treatment at Memorial Medical Center, Doctor's Hospital, and the offices of the various medical providers identified during discovery

4.      Any other evidence provided during discovery erroneously omitted herein

5.      Defendants' discovery responses, including produced documents

6      Depositions of any witnesses deemed unavailable by the Court

7.      Demonstrative Aids Employed by Expert Witnesses

8.      Any exhibit identified by the defendants

B.      Defendant KENT TONNEMACHER's Exhibits

1.      Plaintiff's medical records of her treatment at Memorial Medical Center, Doctor's Hospital, and the offices of the various medical providers identified during discovery

2.      Any other evidence provided during discovery erroneously omitted herein

3.      Plaintiff's discovery responses, including produced documents

4      Depositions of any witnesses deemed unavailable by the Court

5.      Demonstrative Aids Employed by Expert Witnesses

daw

11

C.      Defendant MEMORIAL MEDICAL CENTER's Exhibits

      1.      Plaintiff's medical records from her treatment at Memorial Medical Center

      2.      Plaintiff's discovery responses, including produced documents

      3.      Depositions of any witnesses

      4.      Memorial Medical Center Emergency/Prompt Care Department Fever Guideline

      5.      Memorial Medical Center EMTALA Compliance Policy

## XI.   Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions

Plaintiff indents to introduce certain of the defendants's responses to their requests for admissions, interrogatories, document requests, declarations and depositions as admissions of a party opponent.  Plaintiff also intends to use the depositions taken in this action for all purposes allowed under the Federal Rules of Civil Procedure and Evidence.

## XII.  Further Discovery or Motions

None at this time, other than motions in limine described above.

## XIII.  Stipulations

_____The parties propose that stipulation to the authenticity of the documentary evidence exchanged during discovery or to which there is no controversy as to authenticity will further the efficient resolution of this action.

## XIV.  Amendments/Dismissals

None.

## XV.  Settlement Negotiations

The parties have not yet engaged in extensive settlement discussions.

## XVI.  Agreed Statements

The parties do not believe that a presentation of all or part of this action upon an agreed statement of facts is feasible or advisable.

daw                                          12

XVII.  Separate Trial Of Issues

_____The parties have not requested bifurcation.

XVIII.  Impartial Experts - Limitation Of Experts

The parties do not believe that the Court's appointment of an expert or the limitation on the number of experts is advisable.

XIX.  Attorneys' Fees

Plaintiff may be requesting attorneys fees to the extent that applicable law might make them recoverable as a discretionary matter.


XX.  Further Trial Preparation

A.  Final Witness List

_____The parties are ordered to file and serve their final list of witnesses by 12:00 p.m. (Noon) on May 4, 2006.  Additionally, at that time Plaintiff shall disclose the order of witnesses so that Defendant will be prepared for cross-examination.

_____Except upon the showing set forth above in section IX, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section IX.


B.  Trial Briefs

_____The parties are directed to file and serve a Trial Brief by 4:00 p.m. on April 26, 2006. Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.


C.  Duty of Counsel to Pre-Mark Exhibits

_____The parties are ordered to confer no later than April 14, 2006, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers

daw

13

preceded by the designation JT/-- (e.g., JT/1, JT/2). All of Plaintiffs' exhibits shall be pre-marked with numbers. All of Defendants' exhibits shall be pre-marked with letters.

1. Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a)    Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by 12:00 p.m. (Noon) on May 4, 2006, one for use by the Courtroom Clerk and the other for the court; and

(b)    One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2. Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)    Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above. Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)    As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence." Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)    Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d)    Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For

daw

14

Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

_____   3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

<u>INDEX OF EXHIBITS</u>

| <u>EXHIBIT #</u> | <u>DESCRIPTION</u> | ADMITTED<br><u>IN EVIDENCE</u> | <u>OBJECTION</u><br>FOUNDATION | OTHER<br>OBJECTION |
|---|---|---|---|---|

_____Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may *sua sponte* exclude it from evidence.

D.  Discovery Documents

_____By 12:00 p.m. (Noon) on May 4, 2006, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by May 4, 2006.

E.  Motions In Limine Hearing and Briefing Schedule

_____The hearing for motions in limine will be held on May 2, 2006, at 1:30 p.m.  In addition to addressing any filed motions in limine, at that time the court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing for motions in limine.

By 4:00 p.m. on April 19, 2006,, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

By 4:00 p.m. on April 26, 2006, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel.  If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

By 4:00 p.m. on April 28, 2006, any reply to an opposition shall be filed and served either personally or by facsimile upon opposing counsel.  Because the court will need time to prepare for the hearing on May 2, 2006, the court is not inclined to consider late reply briefs.

F.  Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

G.  Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

H.  Voir Dire

The parties shall file proposed voir dire questions, if any, by 12:00 p.m. (Noon) on May 4, 2006.

Additionally, in order to aid the court in the proper voir dire examination of the prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of the prospective

daw                                        16

witnesses they expect to call, omitting any witness listed in this Pretrial Order whom the party no longer intend to call.  This list shall contain the names of the each witness, and the business and/or home address of each witness.

I.  Proposed Jury Instructions

The parties shall file proposed jury instructions by 12:00 p.m. (Noon) on May 4, 2006, along with a copy of the proposed instructions on a 3-1/2 inch computer disc, preferably formatted for WordPerfect 10.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer immediately after the May 2, 2006, hearing to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

J.  Proposed Verdict Form

Each party shall file a proposed verdict form by 12:00 p.m. (Noon) on May 4, 2006.

K.  Use Of Videotapes

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk on May 4, 2006.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

L.  Use of Videotapes

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

M.  Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by 12:00 p.m. (Noon) on May 4, 2006.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

XXI.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.

//
//
//
//
//
//
//

daw

18

# XXII.  COURTROOM THREE RULES OF CONDUCT DURING TRIAL

A.  General Rules

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

B.  Jury Selection

1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

C.  Opening Statements

1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.  Case in Chief

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.  Witnesses

_____1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.  Exhibits

_____1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.  The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G.  Objections

1.  No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H.  Closing Argument

1.  Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.  _____

daw

1   FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR

2   THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION

3   OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY

4   WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

5

6   IT IS SO ORDERED.

7   **Dated:    April 5, 2006**            _____ **/s/ Anthony W. Ishii** _____
    0m8i78                                  UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   daw                                       21