IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DONNA HOFFMAN,** ) | CIV F 04-5714 AWI DLB |
| ) | |
| Plaintiff, ) | ORDER ON MEMORIAL |
| v. ) | MEMORIAL MEDICAL CENTER'S |
| ) | MOTION TO MODIFY THE |
| **KENT TONNEMACHER, M.D.;** ) | PRE-TRIAL ORDER |
| **UNKNOWN PHYSICIANS;** ) | |
| **MEMORIAL MEDICAL CENTER,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    This is an EMTALA case stemming from Plaintiff Donna Hoffman's ("Hoffman") presentation to Defendant Memorial Medical Center's ("MMC") emergency room and later development of septic shock.  This case was tried to a jury, but the Court was forced to declare a mistrial because the jury was unable to reach agreement on any issue.  MMC has filed a multifaceted motion to modify the original pre-trial order.  Specifically, MMC requests leave to file a second motion for summary judgment, seeks to expand the scope of testimony of Nurse Barbara Osburn, and for permission to disclose/designate an infectious diseases expert, Dr. Patrick Joseph.  For the reasons that follow, MMC's motion will be granted in part and denied in part.

**I.     DISCLOSURE AND DESIGNATION OF INFECTIOUS DISEASES EXPERT DR. PATRICK JOSEPH**

*Defendant's Argument*

At the time of the first pre-trial order, MMC listed as witnesses "other witnesses disclosed by other parties to this action," and believed that it would be able to use co-Defendant Dr. Tonnemacher's two infectious disease doctors as witnesses. However, in making a very close call, the Court granted Hoffman's motion to quash MMC's subpoena of Dr. Tonnemacher's experts due to a settlement agreement between Dr. Tonnemacher and Hoffman. Now, there will be at least four months from the time of this motion to the new trial date. MMC will provide Dr. Joseph's report and make him available for deposition. Given MMC's reliance on Dr. Tonnemacher's experts and the months before a new trial, it is in the interests of justice for MMC to be able to designate an expert.

*Plaintiff's Opposition*

MMC's motion is part of a trial by ambush strategy, but MMC offers no justification for failing to have designated Dr. Joseph or another infectious disease expert during discovery, in compliance with the scheduling order, or in the original pretrial order. Instead, MMC simply argues that now that there will be a retrial, Plaintiff has time to conduct discovery and will not be prejudiced; this is not manifest injustice. In an accompanying declaration, Hoffman's counsel declares that adding Dr. Joseph would change the nature of this lawsuit and add new issues, cost an additional $10,000, and put trial off at least a full year in that Hoffman's counsel has obligations through February 2007.

*Legal Standard*

Federal Rule of Civil Procedure 16(e) mandates that the pretrial order "shall control the subsequent course of the action . . . [and] shall be modified only to prevent manifest injustice." Fed. R. Civ. Pro. 16(e). This does not mean, however, that a pretrial order is a legal "strait-jacket" that unwaveringly binds the parties and the court, rather, the Court retains a "certain amount of latitude to deviate from a pre-trial order," Manley v. AmBase Corp., 337 F.3d 237,

249 (2d Cir. 2003); see also Castlegate, Inc. v. National Tea Co., 34 F.R.D. 221, 226 (D. Col. 1963), so as to prevent manifest injustice. See Fed. R. Civ. Pro. 16(e).

With respect to retrials, district courts have the discretion to admit or exclude new evidence or witnesses on retrial. See Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States Co., 195 F.3d 765, 775 (5th Cir. 1999); Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1449-50 (10th Cir. 1993); Total Containment, Inc. v. Dayco Prods., 177 F.Supp.2d 332, 338-39 (E.D. Pa. 2001); Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2803 (1995); see also Habecker v. Clark Equip. Co., 36 F.3d 278, 288 (3d Cir. 1994). The Tenth Circuit has explained:

> The trial court is much more familiar with the conduct of the original trial, the needs for judicial management and the requirements of basic fairness to the parties in a new trial. We do not feel, however, that the trial court's ruling should be inflexible. Clearly, if the trial court perceives in limiting evidentiary proof in a new trial, a manifest injustice, to one side or the other, the court must retain broad latitude and may with proper notice allow additional witnesses and relevant proof. In this regard, if a party makes a timely motion to produce new and material evidence which was not otherwise readily accessible or known, the court should, within the exercise of discretion, consider whether denial of the new evidence would create a manifest injustice.

Cleveland, 985 F.2d at 1450. Accordingly, where the court "perceives 'manifest injustice' in limiting evidentiary proof at a new trial . . . it may, with proper notice, allow additional witnesses and relevant proof." Martin's Herend Imports, 195 F.3d at 775; Cleveland, 985 F.2d at 1450. A court's discretion also entails permitting or refusing additional discovery. See Habecker, 36 F.3d at 288; Yong v. Nemours Found., 432 F.Supp.2d 439, 441-42 (D. Del. 2006) (granting in part motion for additional discovery and new expert witnesses in preparation for retrial); Advanced Display Sys. v. Kent State Univ., 2002 U.S. Dist. LEXIS 12575, *10 (N.D. Tex. 2002) (noting that a second trial occurred after "additional limited discovery"); Whitehead v. K Mart Corp., 173 F.Supp.2d 553, 565 (S.D. Miss. 2000) (noting that an expert was permitted to be redeposed after first trial); Roberts v. Sears, Roebuck & Co., 1988 U.S. Dist. LEXIS 13285 (N.D. Ill. 1988) (noting the burden of additional discovery to deal with new evidence was insubstantial); see also Martin's Herend Imports, 195 F.3d at 775. The party moving for a modification of a pre-trial

3

order has the burden of showing that an amendment is necessary to prevent manifest injustice. Galdamez v. Potter, 415 F.3d 1015, 1020 (9th Cir. 2005); Byrd v. Guess, 137 F.3d 1126, 1132 (9th Cir. 1998). In evaluating whether a party has shown "manifest injustice" that warrants amendment, courts consider four factors: (1) the degree of prejudice or surprise to the [non-moving party] if the order is modified; (2) the ability of the [non-moving party] to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the party seeking modification. Galdamez, 415 F.3d at 1020; Byrd, 137 F.3d at 1131. However, if the moving party knew or should have known that certain witnesses or evidence were necessary at the time of the first pre-trial, then the exclusion of those witnesses during the retrial will likely not be manifestly unjust. See Martin's Herend Imports, 195 F.3d at 775 n.15.

### ***Discussion***

The Court is in general agreement with Hoffman that a retrial does not mean that the case starts completely anew and all previous orders become subject to reconsideration. Nevertheless, the Court has the discretion to modify the pre-trial order to allow new evidence or new witnesses to be presented at retrial or to allow limited additional discovery in the interests of justice.

In this case, the degree of prejudice or surprise against Hoffman comes mostly in a financial form. Hoffman's counsel has declared that adding Dr. Joseph will cost an additional $10,000 in litigation expenses. Hoffman also argues that adding Dr. Joseph will substantially change the complexity and factual and legal issues of this case. However, the Court fails to see how this is so. Dr. Joseph is an infectious diseases physician whose testimony is offered in rebuttal to Hoffman's infectious diseases expert, Dr. Peggy Goldman. The infectious diseases testimony goes to the causation issues in this case. Hoffman's ultimate burden on causation remains the same irrespective of Dr. Joseph, and the same EMTALA issues will remain irrespective of Dr. Joseph. The case may become slightly more complex with the addition of Dr. Joseph, but the case will simply be on "all fours" with other cases in which complex causation is

4

at issue: both sides will have one causation expert, i.e. an infectious diseases physician. Further, the Court fails to see how the factual issues will change with Dr. Joseph's presence. Dr. Joseph was not a treating physician and he is in the same position as any other non-percipient, retained expert witness. With respect to the potential $10,000 of additional expenses,[1] prior to the settlement with Dr. Tonnemacher, Hoffman had two infectious diseases experts that she had to depose. Assuming $10,000 per expert, Hoffman would have spent $20,000 to depose Dr. Tonnemacher's experts. Adding Dr. Joseph at this stage still leaves Hoffman $10,000 ahead. Additionally, some portion of Dr. Joseph's deposition would be recoverable as costs if Hoffman prevails. See Alflex Corp. v. Underwriters Laboratories, Inc., 914 F.2d 175, 177-78 (9th Cir. 1990).

      The ability to cure the surprise of adding Dr. Joseph is present. Hoffman's counsel indicates that his schedule has many demands through February 2007. However, the Court's calendar also is impacted and a new trial setting for late February 2007 or Spring 2007 is the direction that this case will go irrespective of Dr. Joseph. Hoffman's counsel indicates that adding Dr. Joseph will set this case out a full year, but the Court does not believe that this prediction is accurate. MMC has indicated that Dr. Joseph's expert report will have been available to Hoffman in October 2006. From the date of this order to Spring 2007 is ample time to conduct a deposition, and possibly associated, limited written discovery. Given the probable retrial date, and considering that some of the deposition costs are recoverable costs for a prevailing party, the Court believes that most of the surprise and prejudice to Hoffman is readily curable.

      With respect to any willfulness or bad faith, the Court does not see that MMC has acted in bad faith in requesting the addition of Dr. Joseph. During the first trial, MMC was relying on Dr. Tonnemacher's two retained infectious diseases expert. In resolving Hoffman's motion to quash the subpoenas of Dr. Tonnemacher's experts, MMC's counsel declared that he believed

---

[1] There are no details that show how an extra $10,000 will be spent should Dr. Joseph be allowed to testify.

5

that he had a "gentleman's agreement" with Dr. Tonnemacher's counsel and that he was of the opinion that MMC would be able to use Dr. Tonnemacher's experts. The Court agrees that, where the necessity of a witness was known or should have been known at the time of the first pre-trial order/trial, exclusion of such witnesses generally will not be manifestly unjust. Cf. Martin's Herend Imports, 195 F.3d at 775 n.15. However, this case is different in that MMC believed, based on discussions with Dr. Tonnemacher's counsel, that it would be able to use Dr. Tonnemacher's experts. Although MMC's conduct was not advisable, it does not appear to be willful or in bad faith.

Given the above considerations, the Court concludes that it would be "manifestly unjust" to exclude Dr. Joseph in the retrial of this case. See Byrd, 137 F.3d at 1131; Cleveland, 985 F.2d 1450. Accordingly, the Court will exercise its discretion and allow Dr. Joseph to be designated as a rebuttal expert to Dr. Goldman and will allow limited discovery regarding Dr. Joseph, including deposition and some written discovery. The parties will meet and confer regarding an appropriate discovery schedule. If the parties can agree upon dates for a deposition and additional written discovery, if any, they will file a stipulation outlining their agreement with the Court. If no agreement can be reached within two weeks of this order, the parties will set a meeting with Magistrate Judge Beck to create an appropriate, limited discovery schedule.

**II.     SCOPE OF TESTIMONY OF NURSE OSBURN**

*Defendant's Argument*

MMC argues that it is beyond dispute that Nurse Barbara Osburn has relevant and important information since she performed Hoffman's May 22 triage. Osburn took and recorded the Plaintiff's vital signs and authored many of the entries in the medical records on May 22. Osburn will be presented by MMC for a deposition if Hoffman so desires. Because Hoffman can take Osburn's deposition before trial, the degree of actual prejudice is very minimal. Hoffman made no effort to compel compliance with Rule 26 or to "meet and confer" regarding Nurse

Osburn's last known address. MMC and counsel apologize for not fully complying with Rule 26, but because Hoffman did not ask again for the address, the omission was not egregious. Rule 37 authorizes the district to make such orders "as are just." In light of the current circumstances, there is now ample time to take the deposition of Nurse Osburn.

*Plaintiff's Opposition*

Hoffman argues that MMC has not attempted to establish why it would constitute manifest injustice for the Court to continue to enforce a valid ruling against a party that clearly failed to comply with discovery obligations. MMC has not shown that the Court's exclusionary ruling was erroneous or overly harsh. Further, in a separate portion of the Hoffman's opposition, she discusses the "law of the case" doctrine. By implication, Hoffman argues that the Court should not revisit its exclusionary order because to do so would violate the law of the case.

*Discussion*

At the first trial, the Court excluded the testimony of Nurse Barbara Osburn as a sanction because MMC failed to disclose Osburn's contact information in violation of Rule 26(a)(1)(A).[2] Documents submitted in connection with motions in limine indicated that: (1) on May 9, 2005, Nurse Osburn was identified in a response to an interrogatory as a person who treated Hoffman, (2) on November 1, 2005, Plaintiff noticed Osburn's deposition for November 29, 2005, (3) the noticed November 29, 2005, deposition of Osburn did not occur and on December 1, 2005, Hoffman requested new deposition dates from MMC, (4) on December 22, 2005, and on January 4, 2006, Hoffman again requested new deposition dates for Osburn from MMC, (5) on January 26, 2006, MMC's counsel informed Hoffman that Osburn was no longer employed by MMC and that MMC was attempting to locate the addresses of Osburn (and a second nurse) so that Hoffman could subpoena Osburn; (6) on April 3, 2006, Hoffman requested that MMC supplement its discovery responses in accordance with, *inter alia*, Rule 26(a)(3). There was and

---

[2] The Court allowed Nurse Osburn to testify in rebuttal to testimony regarding Hoffman was discharged due to lack of insurance, which was an issue that arose for the first time during the testimony of Hoffman's mother.

is no indication that MMC ever provided contact information for Osburn, but Osburn was nevertheless listed as a potential witness in the pre-trial order and later listed as a trial witness for MMC on the Thursday before trial.  As the Court found in excluding Osburn's testimony, Hoffman clearly wished to depose Osburn, that intent was manifested in a deposition notice and multiple requests for new deposition dates, and the last discovery paper that expressly mentions Osburn is from MMC stating that it was attempting to locate Osburn's address so that Hoffman could subpoena Osburn.  MMC argues that Hoffman did not file a motion to compel.  Although this is true, MMC was under a duty through Rule 26(a)(1)(A) to disclose Osburn's identity and contact information and was under a duty to supplement its Rule 26(a) disclosures as per Rule 26(e).  See Fed. R. Civ. Pro. 26.  Moreover, MMC had represented that it would locate Osburn's address so that Hoffman could issue a subpoena, and Hoffman further reminded MMC of its supplementing obligations under Rule 26 in her April 3, 2006, request for supplemental discovery.  Considering the foregoing, the Court cannot fault Hoffman for not filing a motion to compel MMC to follow its Rule 26 obligations, especially considering that MMC indicated that it was attempting to locate contact information for Hoffman so that she could issue a subpoena.  Given the above, excluding Osburn's testimony under Rule 37 was not inappropriate.  See Fed. R. Civ. Pro. 26, 37.

      It is true that there is now additional time for Plaintiff to depose Nurse Osburn since there will be a retrial, but the mere fact that a retrial will occur is generally insufficient grounds for a court to alter a previous ruling.  See United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997); United States v. Tham, 960 F.2d 1391, 1397 n.3 (9th Cir. 1991).  Hoffman's desire for Nurse Osburn's deposition was apparent since at least November 1, 2005.  Further, as a treating nurse, it is clear that she would have relevant testimony regarding this case, so the need for or import of her testimony should have been apparent to MMC well before she was listed as a trial witness on May 19, 2006.  Cf. Martin's Herend Imports, 195 F.3d at 775 n.15.  MMC has not disclosed when it learned Nurse Osburn's contact information, and the argument has not been

made that Nurse Osburn's contact information was learned shortly before trial such that earlier discovery supplementation was not possible. Given the above considerations, the Court does not find that it is necessary to permit Nurse Osburn to testify in order to prevent a manifest injustice. See Martin's Herend Imports, 195 F.3d at 775 n.15; Byrd, 137 F.3d at 1131. Accordingly, MMC's motion regarding Nurse Osburn is denied.[3]

### III.    SECOND MOTION FOR SUMMARY JUDGMENT

*Defendant's Argument*

MMC argues that it wishes to file a second motion for summary judgment on the issues of causation and compliance with its EMTALA policy. Specifically, MMC argues that: (1) it will produce a declaration that MMC's emergency room and intensive care units did not have a protocol to administer "early goal directed therapy" to patients with suspected, possible, or diagnosed sepsis and that Hoffman would not have received that therapy; (2) Dr. Goldman's trial and *Daubert* hearing testimony is insufficient to establish causation, (3) declarations from Dr. Tonnemacher and the director of MMC's emergency department will show that it was not the policy of the emergency room to conduct blood tests for patients with presentations similar to Plaintiff, and (4) based on the plain meaning of MMC's EMTALA compliance policy and the deposition and trial testimony of Penny Hastie, there are no questions of fact that the written policy only requires that similar patients be treated similarly.

*Plaintiff's Opposition*

Hoffman argues that a successive motion for summary judgment is not appropriate. The deposition of Dr. Goldman included testimony about early goal directed therapy and causation, so MMC's claims that new evidence is at issue is not accurate. To the extent that Dr. Goldman expounded on this testimony at trial, MMC could have obtained the same information at Dr.

---

[3] Additionally, MMC's motion indicates that it wishes to alter the scope of Dr. Bresler's testimony. However, there is no argument presented regarding Dr. Bresler in MMC's papers. Accordingly, the rulings made on motions in limine regarding Dr. Bresler during the first trial will remain in effect.

9

Goldman's deposition and made a more timely motion. With respect to Dr. Tonnemacher, there is no explanation why MMC could not have obtained the intended declaration years earlier so as to comply with the original scheduling order. Further, Penny Hastie cannot testify as a 30(b)(6) witness, and MMC has not listed any medical director in the pre-trial order, so there is no indication that the evidence that MMC would like to submit in its successive summary judgment motion could be admissible at trial. Finally, MMC has made no showing that the Court has not already considered the legal issues that MMC wishes to address, either in the context of a summary judgment motion, motion in limine, the *Daubert* hearing, or evidentiary rulings at trial. MMC has failed to show that the Court's rulings are "dead wrong" and need to be reconsidered.

### *Legal Standard*

A district court has the discretion to entertain a second motion for summary judgment. See Knox v. Southwest Airlines, 124 F.3d 1103, 1105-06 (9th Cir. 1997); Nightlife Partners, Ltd. v. City of Beverly Hills, 304 F. Supp. 2d 1208, 1214 (C.D. Cal. 2004). "A renewed or successive summary judgment motion is appropriate especially if one of the following grounds exists: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) [the] need to correct a clear error or prevent manifest injustice." Whitford v. Boglino, 63 F.3d 527, 530 (7th Cir. 1995) (quoting Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal. 1986)[4] ); Nightlife Partners, 304 F.Supp.2d at 1215.

### *Discussion*

MMC has not shown that there has been either a change in the controlling law or argued that a second motion for summary judgment is necessary to correct clear error or prevent a manifest injustice. Instead, MMC relies on the availability of new evidence or an expanded factual record.

With respect to MMC's EMTALA policy, compliance with that policy was at issue in the

---

[4]Aff'd in part, rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987).

10

motion for summary judgment. Summary judgment was denied based on Hoffman's arguments regarding Hastie's deposition. Because Hastie has now testified, there is an expanded factual record. The jury, of course, heard Hastie's testimony and also heard her deposition, as it was read to them as part of Hoffman's case in chief. Further, the jury also heard Dr. Tonnemacher's testimony that he believed that he complied with MMC's EMTALA policy and the jury reviewed the policy itself. The verdict form inquired as to whether there was an EMTALA violation. Prior to discharging the jury, the Court asked whether the jury had reached an agreement on any issue presented to them. The jury responded that they could not reach an agreement as to any issue. This indicates to the Court that, after listening to the Hastie's testimony and deposition, and reviewing the EMTALA policy, part of the jury would have found no EMTALA violation and part of the jury would have found an EMTALA violation. The jury's deadlock and inability to answer the first jury question tends to show that there are material issues of disputed fact created by Hastie's testimony and MMC's policy. Given that the Court has already considered the issue of an EMTALA violation through the first summary judgment motion, and given that the jury has considered the pertinent evidence, the Court will deny MMC's request for a second summary judgment motion based on whether MMC violated EMTALA.

An issue that has not arisen in this case heretofore is whether MMC had a protocol regarding "early goal directed therapy." MMC proposes to submit the declaration, presumably from a hospital administrator or director, that MMC had no such protocol for individuals with suspected, possible, or diagnosed sepsis and that Plaintiff would not have received early goal directed therapy at MMC. However, that MMC did not have an express protocol on "early goal directed therapy" does not appear to be necessarily dispositive. It would seem that the knowledge or familiarity of Hoffman's treating physician(s) regarding "early goal directed therapy" would also be necessary. As the Court understands Hoffman's theory, the administration of additional tests would have led to implementation of "early goal directed therapy." If MMC had no protocol and Hoffman's treating physicians were also unaware of

11

"early goal directed therapy," then Hoffman would not have received that treatment at MMC even if Dr. Tonnemacher had administered additional tests.  But, MMC's motion only addresses the existence of protocols.  Also, Dr. Goldman's deposition occurred after MMC's motion for summary judgment was filed, after the deadline for filing dispositive motions occurred, and after discovery had closed, but did occur before the pre-trial conference, before the pre-trial order was issued, and occurred two months prior to trial.  MMC has not explained in its motion why it only now raises the issue of the availability of "early goal directed therapy."  Further, MMC has not pointed the Court to any witnesses that spoke at trial to the availability of "early goal directed therapy" at MMC, and MMC has not requested or argued that additional witnesses be designated to testify as to this issue.  Accordingly, the Court will deny MMC's request for a second summary judgment motion based on the availability of "early goal directed therapy" at MMC.

Finally, as to causation, "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of [EMTALA] may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."  42 USCS § 1395dd(d)(2)(A); Vargas by & Through Gallardo v. Del Puerto Hosp., 98 F.3d 1202, 1205 (9th Cir. 1996).  Hoffman relies on the testimony of Dr. Goldman to establish causation.  Part of Dr. Goldman's testimony was the subject of a motion in limine and a *Daubert* hearing.  The jury heard Dr. Goldman's testimony, but was unable to answer whether an EMTALA violation caused harm.[5]  Unlike the issue of an EMTALA violation, the issue of causation has not been the subject of a motion for summary judgment.  Dr. Goldman's deposition occurred on March 22, 2006,[6] which was after the February 28, 2006, deadline for filing motions for summary judgment,

---

[5] Again, the jury was asked whether MMC violated EMTALA and whether that violation caused harm, but was unable to reach agreement on either questions.

[6] See Court's Docket Doc. No. 90 at Exhibit D.

12

as set by the scheduling order, and was also after the discovery cut off date.[7]  See Court's Docket Doc. No. 34.  Dr. Goldman's Rule 26 report generally discusses causation,[8] but her deposition was not available to MMC by the deadline for summary judgment motions.  Moreover, since the Court will allow Dr. Joseph to offer causation opinions in this case, his opinions represent an additional source of evidence that was not available to MMC at the time of the first summary judgment motion.  Thus, there is now an expanded record on the issue of causation that was not available as of the deadline for filing summary judgment motions.

Also, again as the Court understands Dr. Goldman's testimony, MMC's EMTALA policy required Dr. Tonnemacher to administer various blood tests, the blood test results would have led Dr. Tonnemacher to rule in a bacterial infection and then provide "early-goal-directed therapy," which more likely than not would have prevented "full-blown" sepsis (and thus all of the sequelae of sepsis) from developing.   Negligent medical treatment is not the same as a disparate screening under EMTALA.  See Reynolds v. Mainegeneral Health, 218 F.3d 78, 84 (1st Cir. 2000); Vickers v. Nash Gen. Hosp., 78 F.3d 139, 143 (4th Cir. 1994).  The complained of injuries must be a "direct result" of an EMTALA violation.  See 42 USCS § 1395dd(d)(2)(A); Vargas, 98 F.3d at 1205.  Testimony in this case indicated that certain time frames were involved for both the administration of "early goal directed therapy" and the time it takes to receive test results.  If Hoffman can present evidence that her injuries were a "direct result" of the failure of MMC to follow its EMTALA policy, i.e. the result of a disparate screening, then causation will be left for the jury to decide.  If the evidence does not support an inference that Hoffman's injuries were a direct result of the failure of MMC to follow its EMTALA policy, then there will be a failure of an essential element.

The Court believes that there are potential causation issues in this case.  Given that an

---

[7] MMC filed its motion for summary judgment on January 25, 2006.  Court's Docket Doc. No. 37.

[8] Dr. Goldman, along with her report, appear to have been disclosed on December 15, 2005, by Plaintiff. See Court's Docket Document 40, Exhibit C.

expanded record exists on an issue that was not the subject of a prior summary judgment motion, the Court will allow a second motion for summary judgment on the issue of causation. See Whitford, 63 F.3d at 530; Kern-Tulare Water Dist., 634 F.Supp. at 665.  However, the Court cautions MMC that it does not wish to see a repeat of arguments that this Court has already rejected.

Accordingly, the Court will allow a second motion for summary judgment to be filed, but such a motion will be limited to the issue of causation.  The parties will be ordered to meet and confer regarding a schedule for the filing of a second motion.

## IV.    CONCLUSION

MMC has moved to alter the pre-trial order in preparation for a retrial of this case.  As discussed above, the facts of this case have convinced the Court that allowing Dr. Joseph to testify is necessary to prevent manifest injustice.  However, the Court is not convinced that prohibiting Nurse Osburn's testimony is manifestly unjust.  MMC was under an obligation under the rules and as per a correspondence to provide Nurse Osburn's contact information, and, given Nurse Osburn's involvement as a treating nurse in this case, the import of her testimony should have been readily apparent to MMC.  That there is now additional time due to the necessity of a retrial to obtain Nurse Osburn's testimony is, in and of itself, an insufficient basis for the Court to change its ruling.  Finally, with respect to a second motion for summary judgment, because there is an expanded record, through additional testimony and the opinions of Dr. Joseph, the Court will allow MMC to file a second motion for summary judgment only on the issue of causation.

Accordingly, IT IS HEREBY ORDERED that:

1.   MMC's Motion to Modify the Pre-Trial Order to allow the designation and testimony of Dr. Patrick Joseph is GRANTED;

2.   MMC's Motion to Modify the Pre-Trial Order to allow Nurse Barbara Osburn to

      testify on an expanded basis from that allowed at the first trial is DENIED;

3.   MMC's Motion to Modify the Pre-Trial Order to allow for a second motion for summary judgment on the issue of causation is GRANTED, but is DENIED with respect to the other identified issues; and

4.   Within two weeks from service of this order, the parties are to meet and confer regarding a new trial date, additional discovery regarding Dr. Joseph, and a summary judgment schedule;

    a.   The parties will jointly file with Court proposed dates for a new trial (preferably Spring 2007);

    b.   The parties are to file with the Court an agreed discovery schedule regarding Dr. Joseph;

    c.   If the parties cannot agree to a limited discovery order within the ordered time frame, they are to report immediately to Magistrate Judge Beck in order to set a discovery schedule and notify this Court that a discovery schedule will be determined by the magistrate judge; and

    d.   The parties are to meet and confer and jointly file a proposed schedule for the second motion for summary judgment, limited to the issue of causation.[9]

IT IS SO ORDERED.

**Dated:**   November 29, 2006                 **/s/ Anthony W. Ishii**
0m8i78                                         UNITED STATES DISTRICT JUDGE

---

[9] Upon receiving the proposed summary judgment schedule and proposed trial dates, the Court will thereafter issue an order approving or modifying the proposed schedule and setting the new trial dates.